ALBERT C. BARCLAY, Jr., PLAINTIFF-APPELLANT, v. THE FIRST NATIONAL BANK OF HIGHTSTOWN, *ET AL.*, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 18, 1963—Decided December 13, 1963.

Before Judges GOLDMANN, KILKENNY and COLLESTER.

*Mr. Albert C. Barclay, Jr.* argued the cause for appellant (*Mr. Albert C. Barclay,* attorney).

*Mr. George Gildea* argued the cause for respondents (*Messrs. Katzenbach, Gildea & Rudner,* attorneys).

The opinion of the court was delivered by

COLLESTER, J. A. D. This is an appeal from a summary judgment granted by the Law Division in favor of the defendant bank and eight individual defendants who are directors of said bank, upholding the election of the directors and declaring that the plaintiff was not elected a director at the annual meeting of the shareholders of the bank held on January 8, 1963. 80 *N. J. Super.* 302 (1963).

Plaintiff Albert C. Barclay, Jr. is a substantial shareholder of The First National Bank of Hightstown. Prior to the annual meeting of the bank, plaintiff solicited and obtained proxies from other shareholders, authorizing him to vote their shares.

On December 31, 1962 Beatrice Gaskill, owner of 130 shares of the capital stock of the bank, appointed M. H. Hageman and F. W. Branford as her proxies to vote her shares at the annual meeting. On January 5, 1963 Miss Gaskill revoked, in writing, the proxy previously given and appointed plaintiff as her proxy to vote said shares. The last proxy was undated.

On January 4, 1963 Mary Petterson, owner of 100 shares of the capital stock of the bank, appointed M. W. Hageman and F. W. Branford as her proxies to vote her shares at the annual meeting. On January 5, 1963 Mrs. Petterson also revoked, in writing, the proxy previously given and appointed plaintiff as her proxy to vote her shares. This proxy also was undated.

Plaintiff did not file proxies obtained by him with the cashier of the bank prior to the annual meeting of January 8, 1963. All proxies obtained by the eight directors, who are individual defendants in this action, had been filed with and were held by Kenneth G. Stults, cashier of the bank, prior to the meeting.

At the annual meeting Calvin L. Chamberlin, president of the bank, was elected chairman, and C. Lester Rue was elected secretary of the meeting. The chairman appointed Samuel Bard, Fred L. Dey and Daniel S. Feese to act as judges of the election. A resolution was adopted fixing the number of directors to be elected at eight. Plaintiff and the eight individual defendants were nominated for such offices.

During the progress of the meeting instructions as to the manner of voting were announced by the attorney for the bank. All shareholders present were told to mark their ballots, staple them to the appropriate proxies, and place them in a voting basket on the table at which the chairman and secretary of the meeting were seated.

After the polls opened the bank cashier turned over the proxies in his possession, stapled to ballots for the defendant directors, to Hageman and Branford, the proxy agents named therein. Plaintiff and other proxy holders, pursuant to the instructions given, likewise stapled their proxies and ballots together, with staplers provided by the bank. All ballots and proxies stapled to ballots were then voted by placing the same in the voting basket.

Pursuant to the federal statute cumulative voting was permitted, giving to each shareholder as many votes per share as there were directors to be elected, *viz.*, eight votes per share, and permitting each shareholder to cast all votes for one candidate or any combination of candidates.

Conflicting proxies were voted at the meeting and the judges of election asked defendants' attorney for advice in resolving such conflicts. The latter advised the judges to count undated proxy votes where no other proxy was submitted, but to count only the dated proxy votes where both a dated and an undated proxy for the same shares had been voted. This method was followed by the judges and 8,480 votes cast on undated proxies were counted for the plaintiff.

When all votes had been counted, the judges of election announced that 11,440 votes had been cast for plaintiff and 13,255 votes for each of the incumbent directors. Plaintiff

immediately challenged the election and asked to inspect the ballots and proxies. He was told by defendants' attorney that if he wished to do so he would have to get a court order.

On the following day the bank cashier discovered that the individual defendants' proxies from Miss Gaskill and Mrs. Petterson had been specifically revoked by plaintiff's proxies. The judges of election were notified and 130 votes of Miss Gaskill and 100 votes of Mrs. Petterson, which had been .recorded as having been voted for each of the eight incumbent directors, were deducted from their respective total votes. However, plaintiff was not credited with the 1,840 cumulative votes authorized by his Gaskill and Petterson proxies, and the certificate of findings signed by the judges of election showed a final tally of 13,025 votes for each of the defendant directors and 11,440 votes for the plaintiff. Had the Gaskill and Petterson votes been counted for the plaintiff he would have been elected with a total vote of 13,280.

Plaintiff notified defendants on January 9, 1963 of his intention to question the election. They first permitted him to examine the ballots and proxies on January 21 at which time the rejection of the Gaskill and Petterson proxies was discovered. Plaintiff at once instituted this action in lieu of prerogative writs in the Law Division, pursuant to *N. J. S. A.* 17:9A–95. After answer was filed, plaintiff moved for a summary judgment declaring he had been legally elected as a director and ordering a new election to fill the remaining seven vacancies. The trial court denied plaintiff's motion and instead granted summary judgment in favor of the defendants upholding the election.

The trial judge held that plaintiff failed to comply with the provisions of *N. J. S. A.* 17:9A–90 concerning the filing of proxies and that therefore the Gaskill and Petterson proxies were properly rejected in the election. In this appeal plaintiff contends he complied with the statute and alleges that (1) the court erred in its interpretation of the statute and in not placing the burden upon defendants of justifying their rejection of proxies, and (2) that defendants waived

their right to question and were estopped from questioning the manner in which the proxies were submitted.

## I.

The key issue in this case is whether plaintiff filed his proxies in compliance with *N. J. S. A.* 17:9A–90. The pertinent parts of said statute are as follows:

"Voting in Person or By Proxy
A. Stockholders of a bank may vote at all meetings either in person or by proxy. Every proxy shall be executed in writing by the stockholder or his agent and *shall be filed* with the secretary or cashier of the bank. * * *
B. * * * If a proxy is undated, it shall be presumed to be dated as of the date on which it is filed pursuant to this section.
C. A proxy shall be revocable at will, but its revocation shall not be effective until written notice of such revocation is filed with the secretary or cashier of the bank. * * *
* * * * * * * *
E. While a meeting of the stockholders is in progress the filing with the secretary or cashier of the bank required by subsections A and C of this section shall be made with the secretary of the meeting." (Emphasis added)

It is undenied that none of plaintiff's proxies, including those executed by Miss Gaskill and Mrs. Petterson, were filed with the cashier before the annual meeting. (The bank has no secretary.) The question is whether or not they were *filed* with the secretary of the meeting.

Defendants contend that the Gaskill and Petterson proxies given to plaintiff were not so filed, and therefore plaintiff had no right to vote them. They assert that in contemplation of law a paper is considered as filed when delivered to the proper custodian and received by him to be kept on file, citing *Poetz v. Mix*, 7 *N. J.* 436, 442 (1951), and that, in the instant case, plaintiff did not *deliver* the proxies to the secretary of the meeting as required by the statute. If defendants are correct, then the 8,480 votes cast for plaintiff by proxy also should not have been counted by the judges of election, with the result that he received only 2,960 votes cast in person by William R. Meirs.

478

Although conceding that plaintiff was legally entitled to submit his proxies during the election, the trial court held they were not properly filed because they were not brought to the attention of the secretary of the meeting. The court indicated that the primary purpose of the filing required by the statute was to prevent shareholders from "surprising" the management. The court also apparently concluded that the statute required plaintiff to submit his proxies by physically handing them to the secretary of the meeting.

We do not construe the filing requirements as a protection for management. In our view such requirements were enacted into law for the benefit and protection of all shareholders. It is obvious that a proxy is but a form of absentee ballot made necessary in order to protect the voting rights of the many shareholders who are unable to attend a corporation meeting in person.

The purpose of the statute requiring the filing of proxies is primarily one of identification. Thus the responsible official is enabled to determine whether or not the person executing the proxy is a *bona fide* shareholder of the corporation entitled to vote at the meeting; the number of votes which can be cast by the proxy agent; the identity of the proxy agent, and whether the proxy revokes a previously executed proxy given by the shareholder.

Neither do we construe the statute to require a literal physical delivery of the proxy into the hands of the secretary of the meeting. It is sufficient if it is made known that a proxy is being presented to be voted at the meeting and said proxy is delivered over into his custody. To hold otherwise would be to exalt form over substance.

"Filing" consists in placing in the custody of the proper official the paper to be filed. *Mahnken v. Meltz*, 97 *N. J. L.* 159, 161 (*E. & A.* 1922) ; *Poetz v. Mix, supra.* In the instant case plaintiff, along with others, was instructed by the attorney of the bank, with the tacit approval of the secretary of the meeting and all others present, to staple his proxies to his ballots and to deposit the same in a basket on the

table at which the chairman and secretary of the meeting were seated. The basket containing the proxies was under the control and custody of the secretary of the meeting and the proxies were available for his inspection.

Unquestionably, all parties approved such procedure and considered plaintiff's proxies as duly "filed." We are satisfied that the statute was substantially complied with.

The judges of election counted all ballots to which plaintiff had annexed undated proxies except those representing the Gaskill and Petterson shares. As to the latter, a conflict in the proxies arose because prior dated proxies had been given to vote these shares for the defendant directors. The judges, at the direction of the bank's attorney, counted defendants' dated proxies and rejected plaintiff's undated proxies.

Since the judges considered plaintiff's other undated proxies as filed on the date of the meeting, the rejection of plaintiff's Gaskill and Petterson proxies was clearly contrary to the provisions of the statute. Subsection B of the statute provides that if a proxy is undated, it shall be presumed to be dated as of the date on which it is filed. The presumption accorded by the statute should have been invoked. The valid undated proxies thus would have revoked and superseded the proxies dated prior to the meeting.

On the day following the election, when it was discovered that plaintiff's proxies had revoked the Gaskill and Petterson proxies previously given to the defendant directors, the 230 votes representing these shares and credited to each director were cancelled by the judges of election. The total vote of each incumbent director was reduced accordingly. Since, under subsection C of the statute, the revocation of a proxy is not effective until written notice of such revocation is filed with the secretary or cashier of the bank, or under subsection E, with the secretary of the shareholders' meeting while such meeting is in progress, it is clear that the judges of election considered plaintiff's undated proxies containing the written notice of revocation as having been properly filed at the meeting.

No logical answer is given for not crediting plaintiff with the 1,840 cumulative votes represented by his Gaskill and Petterson proxies. If the plaintiff's proxies revoked the prior Gaskill and Petterson proxies given to the defendant directors, as recognized by the judges of election and the defendants, then the votes for plaintiff authorized by said proxies were valid and should have been added to plaintiff's total vote.

We are satisfied that the judges of election erroneously failed to credit 1,840 votes to plaintiff which, if added to his total vote, would have resulted in his election.

It is clear that on January 8, 1963 the secretary of the meeting, the defendants and all others present at the annual meeting considered plaintiff's proxies to have been filed in accordance with the statute. It is noteworthy that the issue of "improper filing" was never raised until defendants' answer to plaintiff's complaint in this action was filed seven weeks after the election. It was clearly an afterthought.

We are satisfied that plaintiff was fairly elected a director at the annual meeting of the defendant bank and that the will of the shareholders whom he represented should not have been thwarted by the unsound technical objection stated at the meeting for rejecting his undated proxies, or the equally unsound belated technical objection that the proxies had not been filed as required by the statute.

In our opinion the trial court erred in his rigid application of *N. J. S. A.* 17:9A–90 which deprived plaintiff of the votes represented by the Gaskill and Petterson proxies. Plaintiff's motion for a summary judgment declaring that he was legally elected as a director at the annual meeting held on January 8, 1963 should have been granted. Who among the eight directors, who received an equal number of votes at the annual election, should hold the seven remaining directorships, will have to be resolved by a new election or by agreement.

This disposition makes it unnecessary for us to consider the remaining points raised. The judgment is reversed and judgment, as set forth above, will be entered for plaintiff.